IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BOWA ESTATES LIMITED, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF WAILEA POINT VILLAGE, *et al.*,<br><br>Defendants. | Civil No. 23-00582 MWJS-RT<br><br>ORDER GRANTING IN PART AND RESERVING RULING IN PART ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, DENYING IN PART AND RESERVING RULING IN PART ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, DENYING PLAINTIFFS' REQUEST FOR A RULE 56(D) CONTINUANCE, AND DIRECTING SUPPLEMENTAL BRIEFING |

## <u>INTRODUCTION</u>

This suit challenges the validity of an amendment made to the governing rules, or Declaration, of the Association of Apartment Owners of Wailea Point Village in Maui. Before the Amendment, owners who bought into the Association had agreed to 30-day minimum lease restrictions—that is, they agreed not to rent out their apartments for periods shorter than 30 days. In 2022, some of the apartment owners voted to adopt the Amendment, which purported to change the minimum rental period to a substantially longer period of one year, or 365 days. Not all the owners agreed to the change, however. Those who voted against it sued the Association and its Board

members, asserting that the Amendment was not approved by the required number of owners.

The case is now before the Court on cross-motions for summary judgment on the Association's counterclaim for a declaratory judgment. The principal question presented at this stage is a narrow one: whether the Amendment required the approval of all the owners. For the reasons explained below, the Court concludes that it did not. On the current record, however, it is not clear whether the Association has met its burden to further show that the Amendment is valid and that the Association is entitled to an order requiring specific performance. The Court therefore ORDERS the parties to submit supplemental briefing addressing those issues, as detailed below.

Accordingly, the Court GRANTS IN PART and RESERVES RULING IN PART on the Association's Motion for Summary Judgment on its Counterclaim, and DENIES IN PART and RESERVES RULING IN PART on Plaintiffs' Motion for Summary Judgment on the Association's Counterclaim. For the reasons explained below, the Court also DENIES Plaintiffs' request for a continuance under Federal Rule of Civil Procedure 56(d).

## BACKGROUND

**A.    Factual Background**

**1.    The Declaration and the Amendment**

The condominium complex at issue, Wailea Point Village, is located in Wailea on the island of Maui.  It encompasses three types of units:  residential apartments, car garage apartments, and boat garage apartments.  ECF No. 60, at PageID.242 (Def.'s Concise Statement of Facts (CSF) ¶ 3).  Plaintiffs in this case each own apartments in the complex and are members of its governing Association.

The Association's role and rules are defined by the Declaration, which is a contract between the Association and property owners who buy into it.  *See* ECF No. 60-3.  The Declaration lays out, among other things, various terms the owners agreed to be bound by in exchange for the Association's services and common elements.  Under Section 7 of the Declaration, for example, which is titled "Purposes of and Restrictions on the Use of the Buildings, Individual Apartments and Common Elements," the Declaration defines the purposes of the different types of apartments and the restrictions on their use:  The residential apartments may only be used as "residential dwellings."  *Id.* at PageID.262 (some capitalizations omitted).  The car and boat garages, on the other hand, may be used as parking areas for motor vehicles and boats, among other things, but may not be used as dwellings.  *Id.*  In addition, Section 7 gives the Association "the power to enact resolutions, rules and regulations . . . reasonably

restricting and regulating the use of the apartments," so long as they are "consistent with the terms" of the Declaration.  *Id.*  To that end, the Declaration establishes that the owners have an "absolute right to lease" their apartments.  *Id.* at PageID.263.  But from the beginning, that right was expressly limited:  the original Declaration provided that "no apartment shall be leased or rented by any apartment owner for transient purposes, *which is defined as a lease or rental for a period less than thirty (30) consecutive days*."  *Id.* (emphasis added) (footnote omitted).

In July 2022, the Association's Board sent out consent forms to owners regarding the Amendment.  ECF No. 60-6, at PageID.355 (Consent Form); ECF No. 60-2, at PageID.250 (Ass'n Bd. President Valerie Hunter Decl. ¶ 6).  The Amendment would change the definition of "transient purposes" in Section 7 of the Declaration:  if approved, it would prohibit owners from leasing out their apartments for periods of less than 365 days—a full year—rather than the existing 30-day minimum rental period.  ECF No. 60-7, at PageID.356 (Amend.).[1]

> ### 2.    The Consent Standards Contained in Sections 10 and 21.C of the Declaration

The Declaration contains two separate sections that address the process by which owners can amend it.

---

[1]    From Plaintiffs' view, this move was part of a broader effort by the Board to limit taxes on the properties; it would allow the Board to seek a change of the condominium complex's zoning from "hotel" to "apartment."  *See* ECF No. 63, at PageID.396.

4

The central provision here is Section 10 of the Declaration, which broadly states in its first paragraph that "except as otherwise provided herein . . . this Declaration . . . may be amended by either the affirmative vote or written consent of apartment owners owning apartments to which are appurtenant not less than sixty-seven percent (67%) of the common interest."  ECF No. 60-3, at PageID.268.  Section 10 says that such an amendment "shall be effective only upon the filing in the Office of the Assistant Registrar of the Land Court of the State of Hawaiʻi of an instrument setting forth such amendment and vote duly executed by such owners."  *Id.*

Section 10 goes on, however, to require the "consent of all apartment owners" for a limited set of amendments to the Declaration:  amendments that "effect[] a change in the fundamental purposes of or restrictions on the use of any apartment or the common elements."  *Id.* at PageID.269.  That provision, known as the "unanimity clause," is central to Plaintiffs' suit.

The second pertinent section of the Declaration, which lays out a separate approval threshold based on 67 percent of the owners, is Section 21.C.  That section provides: "Notwithstanding anything to the contrary in the Project governing documents, including but not limited to the Declaration, . . . Amendments to the Declaration . . . shall require approval of 67% of the owners."  *Id.* at PageID.274.

### 3. The Amendment Receives the Consent of the Owners of 70 Percent of the Common Interest

In the distributed consent forms, the Board took the position that the Amendment to the minimum rental period could be approved with the consent of the owners of 67 percent of the common interest under a voting standard set forth in Section 10 of the Declaration. *See* ECF No. 60-6, at PageID.355. According to the Association, when it received the consent forms back from the owners, that threshold was met. ECF No. 60-2, at PageID.250 (Hunter Decl. ¶ 10) (stating that "[b]y October 18, 2022, written consent forms marked 'approved' had been received by more than 70% of all ownership interest in the AOAO"). And so on October 18, 2022, the Amendment was recorded in the State of Hawai'i Office of the Assistant Registrar Land Court System. *Id.* (¶ 9); ECF No. 60-9.

The Amendment itself, however, did not state that it had been approved by owners of at least 67 percent of the *common interest*, as Section 10 of the Declaration requires; instead, the Amendment stated that it had been approved by more than 67 percent of the *owners*, as allowed by the separate voting standard contained in Section 21.C of the Declaration. ECF No. 60-9, at PageID.362-63.

In any event, not all of the apartment owners consented to the Amendment, so there is no question that it did not satisfy Section 10's unanimity clause. Plaintiffs were among the dissenters, and they now dispute the Amendment's validity, arguing that unanimous consent of the Amendment was required. As of this Order, the Amendment

6

has yet to affect existing rental agreements because it includes a grandfathering clause, which has been extended to June 2026.  *See* ECF No. 60-11.[2]

### B.    Plaintiffs' Lawsuit Challenging the Amendment

On December 8, 2023, Plaintiff owners[3] filed this suit, relying on diversity as the basis for federal jurisdiction.  ECF No. 1.  In their First Amended Complaint, Plaintiffs name as Defendants the Association and its individual Board Directors for the 2022 and 2023 terms.[4]  ECF No. 54.  Plaintiffs contend that the Amendment was improperly recorded because unanimous approval was required.  *Id.*  On those grounds, Plaintiffs advance state law claims for injunctive relief, breach of contract, breach of statutory and fiduciary duties, and retaliation.  *Id.*  In response, the Association filed a counterclaim, in which it seeks a declaratory judgment interpreting Section 10 of the Declaration and ordering that Plaintiffs abide by the terms of the Amendment once it goes into effect.

_____

[2]    There is no question that the parties have Article III standing to advance their claims—the Association has suggested no intention of further extending the grandfathering clause past June 2026, Plaintiffs' apartments are clearly covered by the Amendment, and Plaintiffs' ability to extend leases of fewer than 365 days in or after June 2026 is being affected now.  For these same reasons, the parties' claims are also sufficiently ripe.

[3]    Plaintiffs include Bowa Estates Limited; C. Donald Dempsey and Mayako Y. Dempsey, Trustees of the Dempsey Family Trust; Joachim Bosch and Michelle Bosch, Trustees of the Legacy Trust; and Thomas C. Ainsworth, Trustee of the R. Clayton Ainsworth 1997 Irrevocable Property Trust.  ECF No. 54.

[4]    The individual Defendants are Dale Knutson, Eileen Hantke, Jill Inskeep, Joseph Azar, Lowell McAdam, Michael Murray, Mike Avila, Rob King, Robbie Dein, Robert Hoffman, and Steve Wells.  ECF No. 54.

ECF No. 55.  The Association maintains that 67 percent of ownership interest is the required threshold for approval of the Declaration.  *Id.*

Before the Court are cross-motions for summary judgment on the Association's counterclaim.  ECF Nos. 59 & 73.  The Court held a hearing on the parties' motions on March 13, 2025.  ECF No. 81.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the movant shows there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine disputes of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party makes that showing, the burden then shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).  As the Ninth Circuit has explained, while "the burden on the nonmoving party is not a heavy one," they must "show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial."  *Dark v. Curry County*, 451 F.3d 1078, 1082 n.2 (9th Cir. 2006) (cleaned up).

If "the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting

evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Rather, the "nonmoving party's evidence must be taken as true," and the Court must draw all reasonable inferences in the nonmoving party's favor. *Id.* But where a reasonable juror could not find for the nonmoving party—even accepting their evidence as true and drawing all reasonable inferences in their favor—summary judgment must follow. *See id.*

<u>DISCUSSION</u>

**A.    Interpretation of the Declaration's Consent Provisions**

The summary judgment motions tee up the question of how to properly interpret the Declaration and, in particular, its provisions for consenting to amendments to its terms. The threshold question is whether state or federal law controls on this interpretive issue. The answer is found in the fact that the Declaration "serve[s] as a contract between the condominium owners and the association, establishing the rules governing the condominium." *Harrison v. Casa De Emdeko, Inc.*, 142 Hawaiʻi 218, 226, 418 P.3d 559, 567 (2018). As "a general rule, the construction and legal effect to be given a contract is a question of law." *Found. Int'l, Inc. v. E.T. Ige Constr., Inc.*, 102 Hawaiʻi 487, 494-95, 78 P.3d 23, 30-31 (2003) (cleaned up). And because the Court's authority to hear this case arises from diversity jurisdiction, it must apply Hawaiʻi state contract law to resolve the disputed interpretive issue. *See Mason & Dixon Intermodal, Inc. v. Lapmaster*

9

*Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) (explaining that federal courts sitting in diversity apply state substantive law).

Under Hawaiʻi state law, a court's objective must be "to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawaiʻi 36, 45, 305 P.3d 452, 461 (2013). In doing so, unambiguous contract terms are "interpreted according to their plain, ordinary, and accepted sense in common speech." *Santiago v. Tanaka*, 137 Hawaiʻi 137, 155, 366 P.3d 612, 630 (2016). The terms are not to be read in isolation, however; a "contract should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause." *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Hawaiʻi 77, 92, 148 P.3d 1179, 1194 (2006) (cleaned up). And, importantly, Hawaiʻi law instructs that condominium declarations in particular are to be "liberally construed to facilitate the operation of the condominium property regime." Hawaiʻi Revised Statutes (HRS) § 514B-10(b) (2018).

Guided by these principles of Hawaiʻi state law, the Court now turns to the parties' arguments for why the Declaration's consent provisions should be interpreted in their favor.

1. The parties dispute whether the Amendment is the type of modification that falls within Section 10's unanimity provision. Section 10 ordinarily allows amendments with the consent of owners of 67 percent of the common interest. But by its terms,

Section 10 requires unanimous consent of "all apartment owners" when an amendment would "*effect*[] *a change in the fundamental purposes of or restrictions on the use* of any apartment or the common elements." ECF No. 60-3, at PageID.269 (emphasis added).

In the Association's view, the Amendment does not fall within the meaning of Section 10's unanimity clause because the Amendment "affected only duration and not a change in the 'use' of a dwelling." ECF No. 59-1, at PageID.232. To illustrate its point, the Association explains that the "use" of an apartment only encompasses, for example, its designation as residential or non-residential (such as a boat or car garage). *Id.* at PageID.228-32. Only those types of categorical rules, the Association says, count as the "use" of an apartment, and so only a change to those categorical rules would constitute a change in a purpose or restriction on use. Under this interpretation of the Declaration, unanimity would be required to change the permitted use of an apartment from, say, residential to a garage, but unanimity would not be required to change the minimum rental period of a residential apartment. That is because in the latter case, the "use" of the apartment would remain as residential.

This argument appears to sweep too broadly, for the Declaration, viewed as a whole, does not speak of the "use" of apartments in as narrow a way as the Association suggests. Recall that a different section of the Declaration—Section 7—is titled "Purposes of and Restrictions on the Use of the Buildings, Individual Apartments and Common Elements." ECF No. 60-3, at PageID.262 (some capitalizations omitted).

11

Consistent with that heading, the text of Section 7 begins by explaining the "purposes"

for which the different types of apartments may be used:  Residential apartments may

be used only as "residential dwellings," while the car and boat garages may be used as

parking areas for motor vehicles and boats, but not as dwellings.  *Id.*  Section 7 then

goes on to state that the Association "shall have the power to enact resolutions, rules

and regulations . . . *reasonably restricting and regulating the use* of the apartments," subject

to the requirement that they be "consistent with the terms" of the Declaration.  *Id.*

(emphasis added).  It then sets forth a list of acceptable uses and their restrictions.  *See*

*id.* at PageID.262-68.  And the first item in that list, Section 7.A, is the owners' "absolute

right" to lease, except for "transient purposes"—which, as noted, were initially defined

as a period less than 30 days.  *Id.* at PageID.263.  This language supports the notion that

the "purpose" of an apartment is limited to its categorical designation—as, for example,

residential, rather than for transient purposes.  But it also supports the view that the

"use" of an apartment has a broader context, and may well include an owner's use of an

apartment for leases of at least 30 days.  After all, it is unlikely that the Association

would accept that its power to adopt regulations reasonably restricting the "use" of

apartments is limited to changing the categorical designations of the apartments.  And

if the Association's power to adopt a reasonable restriction on "use" covers more than

changing the categorical designations, then a restriction on "use" itself also likely covers

more than that.

This construction of the Declaration is bolstered by a Washington Supreme Court case cited by Plaintiffs, *Filmore LLLP v. Unit Owners Association of Centre Pointe Condominium*, 184 Wash. 2d 170, 355 P.3d 1128 (2015). In *Filmore*, the Washington Supreme Court considered whether an amendment to a condominium declaration that limited the percentage of units that could be leased required special supermajority approval. *Id.* at 171, 355 P.3d at 1129. The declaration at issue provided that 90 percent supermajority approval was required for amendments that changed "the uses to which any Unit is restricted." *Id.* at 172, 355 P.3d at 1130. The Washington Supreme Court considered the broader context of the Declaration and concluded that because the Declaration's "Lease Restrictions" were positioned under the broader "Permitted Uses" heading, a provision on leasing was appropriately understood as restricting the "use" of a unit. *Id.* at 174, 355 P.3d at 1131. For that reason, it held that supermajority approval was required for the amendment to the declaration. *Id.* at 175, 355 P.3d at 1131. The Association offers no reason why the same would not be true here, given the seemingly expansive language of Section 7 and the apparent link between restrictions on use and the minimum duration of leases evidenced in that section.

For these reasons, although the Court concludes that the Amendment was not a change to a purpose of any apartment, there is at least an argument that it effected a change to a restriction on use.

2.   The Association responds that even if the Amendment effected a change to a

restriction on use, it still did not require unanimity because it did not effect a change to

a "fundamental" restriction on use.  Section 10 only uses the word "fundamental" once:

unanimity is required for "a change in the *fundamental* purposes of or restrictions on the

use of any apartment or the common elements."  ECF No. 60-3, at PageID.269 (emphasis

added).  But relying on the series-qualifier canon, the Association contends that the

word "fundamental" modifies both "purposes of" and "restrictions on" the use of any

apartment.  ECF No. 59-1, at PageID.232-37.  Put differently, applying the qualifier

"fundamental" across the list of types of changes, the unanimity clause would read in

full, "The consent of all apartment owners shall be required for any amendment to this

Declaration or to the By-Laws effecting a change in the *fundamental* purposes of or

*fundamental* restrictions on the use of any apartment or the common elements."

In making this argument, the Association starts with a strong hand.  Under the

series-qualifier canon, when there is a "'straightforward, parallel construction'" of all

the nouns or verbs in a series, "a pre-positive modifier modifies all items that follow" in

the series.  *DJL AZ Inv. LLC v. Chi. Title Ins. Co.*, No. CV-22-08030, 2024 WL 1829256, at

*3 (D. Ariz. Mar. 13, 2024) (quoting *Series-Qualifier Canon*, *Black's Law Dictionary* (10th

ed. 2009)); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 402-03 (2021) (citing Antonin

Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 148 (2012)).  The

opposite is true "when the syntax in a legal instrument involves something other than a

14

parallel series of nouns or verbs"—in that case, a prepositive modifier "normally

applies only to the nearest reasonable referent." *Nearest-Reasonable-Referent Canon*,

*Black's Law Dictionary* (12th ed. 2024).

The Hawaiʻi Supreme Court has embraced the series-qualifier canon as a tool of

interpretation. *See Sylvester v. Admin. Dir. of Cts.*, 149 Hawaiʻi 486, 490, 494 P.3d 1219,

1223 (2021). The question is simply whether the series-qualifier canon should apply to

Section 10. The Court concludes that it should. The phrases "purposes of" and

"restrictions on" in Section 10 are parallel in syntax. Applying the word "fundamental"

to both phrases is straightforward. And aside from pointing out the general principle

that the series-qualifier canon is merely a presumption that is sensitive to context, ECF

No. 63, at PageID.406-07, Plaintiffs offer no grammatical reason for why the

presumption would not apply here. The Court, for its part, sees none.

To the extent that Plaintiffs again rely on the Washington Supreme Court

decision in *Filmore*, that case establishes only that it would not be anomalous for the

Association to draft a declaration that required the higher vote threshold for *any*

changes in restrictions on the use of apartments, even ones that are not fundamental;

the declaration at issue in *Filmore* required a 90 percent vote for declaration

amendments that changed "the uses to which any Unit is restricted." 184 Wash. 2d at

172, 355 P.3d at 1130. But Plaintiffs do not argue that *Filmore* involved the

"fundamental" language at issue in this case, and that case thus offers no reason why the series-qualifier canon should not apply here.

The Court therefore concludes that to find that the unanimity clause is implicated, the Amendment must qualify as a change to either the "fundamental" purposes of or the "fundamental" restrictions on the use of any apartment.

3.    The Court has already concluded that the Amendment does not effect a change to the fundamental purposes of any apartment.  So the remaining question is whether the Amendment effected a change in the "fundamental" restrictions on the use of any apartment.  Put another way, the Court must determine whether a minimum lease period qualifies as one of the fundamental restrictions on the use of an apartment. The parties agree that this is a question of law that the Court can and should resolve.

The term "fundamental" is not defined in the Declaration itself, but a common meaning of fundamental is "of central importance" or "of or relating to essential structure, function, or facts." *Fundamental*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020); *see also Fundamental*, The Britannica Dictionary, https://www.britannica.com/dictionary/fundamental (last visited Apr. 22, 2025) (defining "fundamental" as "forming or relating to the most important part of something" or "of or relating to the basic structure or function of something").

And in determining what might qualify as one of the "fundamental" restrictions on use—in the sense of a restriction forming the most important kind of regulation—the

16

Hawaiʻi Supreme Court's decision in *Kam v. Noh*, 70 Haw. 321, 770 P.2d 414 (1989), is illustrative. In *Kam*, the Hawaiʻi Supreme Court considered whether a restrictive covenant in a deed imposing building height limitations had expired by operation of a state statute, which provides that "'all restrictions relating to the use' of residential lots sold in fee simple shall expire within ten years after issuance of the deed." *Id.* at 322, 770 P.2d at 415 (quoting HRS § 171-63(b)). Because the term "use" was not defined in the statutory text, the Hawaiʻi Supreme Court looked to other sections of the relevant HRS chapter and determined that the legislature had employed the term "use" as "synonymous with 'purpose.'" *Id.* at 325, 770 P.2d at 416. The chapter interchangeably discussed categorical classifications of "residential" and "agricultural" "uses" and "purposes," and did not employ the term "use" to refer to building characteristics. *Id.* at 325-26, 770 P.2d at 416-18. The Hawaiʻi Supreme Court therefore held that "restrictions relating to the use" of residential lots covered only the categorical purpose to which the land was put (whether the land was put to residential or agricultural use, for example) and did not cover restrictions on the particular characteristics of a lot falling within that category (how tall a building could be constructed, for example).

With the Hawaiʻi Supreme Court's decision in *Kam* as background law against which the drafters of the Declaration must be presumed to have written, the word "fundamental" takes on heightened significance. *Kam* supports the conclusion that when boiled down to its essence, the "fundamental" or basic type of restriction on use is

17

the categorical designation of how a property may be used, whether as residential or

something else.  And while the concept of "restrictions on use" might possibly be read

more broadly than that, adding the word "fundamental" changes the calculus.  The

word "fundamental" cabins the meaning of "restrictions on use" to the most important

or basic restrictions.  For these reasons, the Court agrees with the Association that

although the Amendment changed the Declaration's definition of transient uses, it did

not change the "fundamental" restrictions on use.

Plaintiffs respond that "fundamental" should not be interpreted in this rule-like

or categorical way, but that it should instead be applied in a more case-by-case manner.

And they argue that minimum lease requirements are, by that more capacious standard,

surely important enough to qualify as "fundamental."  But Plaintiffs' argument runs up

against public policy, as enshrined in Hawai'i law.  Hawai'i law instructs that

condominium declarations are to be "liberally construed to facilitate the operation of

the condominium property regime."  HRS § 514B-10(b).  Plaintiffs' interpretation of the

unanimity clause would achieve the opposite.  Under Plaintiffs' interpretation,

unanimity would be required whenever a proposed amendment is sufficiently

important in some sense.  What standard a court would use to measure importance is

anyone's guess—and, tellingly, Plaintiffs offer no workable standard in their briefs.  The

practical result of adopting Plaintiffs' interpretation would be to strip the Association of

a great deal of its ability to effectively govern; the Association would frequently need to

await a court's say-so as to whether any proposed amendment is (in a court's view) important enough to require unanimity.  Even if that were a plausible construction of the Declaration, it is not a permissible one in the condominium context, where Hawaiʻi law requires the Court to interpret the governing document in a way that facilitates the proper working of the condominium property regime.

The Court's interpretation of "fundamental restrictions on use," by contrast, does just that:  it makes the condominium property regime workable because it allows the Association and apartment owners to avoid endless litigation over the importance of each and every proposed change.  By recognizing that the categorical designations of an apartment are what counts as the "fundamental" purposes or restrictions on use, the Court's interpretation provides a clear rule for when unanimity is required.  Moreover, as the Association explains, this interpretation preserves adequate protection from extreme restrictions—such as a change in the minimum lease period to 30 *years* rather than 30 days—because the owners of 67 percent of the common interest would be highly unlikely to vote for something that is harmful to their own economic interests.

Resisting these conclusions, Plaintiffs point to *Hawaiʻi Legal Short-Term Rental Alliance v. City & County of Honolulu*, No. 22-cv-247, 2022 WL 7471692 (D. Haw. Oct. 13, 2022).  The district court there enjoined a Honolulu ordinance that would have increased the minimum permissible rental period for residential property owners from 30 to 90 days.  *Id.* at *1.  The injunction was based in part on a conclusion that the

19

ordinance likely violated constitutional Takings Clause principles. *Id.* at *9-11. In so

holding, the district court noted that the individual property owners had a "vested

property right" in 30- to 89-day rentals. *Id.* at *10. That entitlement arose from

equitable reliance principles: many property owners relied on the lawfulness of 30- to

89-day rentals "to offset the costs of ownership and/or to finance their retirements";

property owners "made decisions to purchase and/or to finance based on their ability to

rent for periods of 30-89 days"; and if the property owners were "unable to continue to

rent their properties for periods of 30-89 days, many [would] have to sell." *Id.*

Needless to say, Takings Clause principles do not apply to restrictions on the use

of property imposed by a private association, rather than the government. And the fact

that the Association is a private organization—governed by a private contract—has

added significance. For to the extent that Plaintiffs rely on *Short-Term Rental* to argue

that the Amendment improperly took away their "absolute right" to lease, the

Declaration shows otherwise. As the Association persuasively argues, the "absolute

right" to lease is better understood as preventing the Association from altogether

prohibiting owners from leasing their apartments, or micromanaging to whom an

apartment is leased. At the same time, the "absolute right" to lease is limited by the

Declaration's grant of power to the Association to reasonably restrict the use of

apartments. Indeed, the Declaration itself originally included a restriction on the

minimum rental period, albeit a shorter 30 days. ECF No. 60-3, at PageID.263; *see also*

*Uyeshiro v. Irongate Azrep BW LLC*, Civ. No. 13-00043, 2014 WL 414219, at *15-16 (D.

Haw. Feb. 3, 2014) (rejecting a fraudulent misrepresentation claim based on a contract's

"absolute right to lease" provision where the relevant documents made "clear that,

while unit owners are free to rent out their units to whomever they choose without

obtaining the permission of other unit owners, rentals will nevertheless be subject to

certain restrictions and requirements").

More generally, as the Association emphasizes, "the uniqueness of the

condominium concept of ownership has caused the law to recognize that each unit

owner must give up some degree of freedom of choice he might otherwise enjoy in

separate, privately owned property." *Ass'n of Owners of Kukui Plaza v. City & County of

Honolulu*, 7 Haw. App. 60, 74, 742 P.2d 974, 983 (App. 1987) (internal quotation marks

omitted). An owner's reservations (and concessions) of their rights are defined by their

contracts with a condominium association. And here, at the time of contracting, an

owner would reasonably have understood Section 10 of the Declaration to protect their

rights by requiring the approval of the owners of 67 percent of the common interest for

amendments that do not effect a change in the fundamental purposes of or restrictions

on the use of any apartment, and unanimity only for those that do.

*    *    *

In light of the Declaration's text and context and Hawaiʻi public policy, the Court

concludes that the Amendment did not effect a change in the fundamental purposes of

21

or restrictions on the use of the apartments within the meaning of Section 10's

unanimity clause.  Accordingly, the Association is entitled to judgment as a matter of

law on the Association's counterclaim to the extent that it seeks a declaratory judgment

that the unanimity clause did not apply to the Amendment.  The Association's motion

for summary judgment is GRANTED IN PART on that issue, and Plaintiffs' motion is

DENIED to the same extent.

### B.    Equitable Relief Based on the Consent Forms Here

That leaves the second half of the Association's counterclaim, which seeks an

order declaring that the Amendment is valid and requiring Plaintiffs to abide by the

terms of the Amendment once it goes into effect.  The Association has not, however,

offered a substantive argument in its motion papers addressing why an order requiring

specific performance is appropriate.  *See* ECF No. 59.

1.   To be entitled to an order requiring specific performance, the Association

would first need to establish that the Amendment has actually satisfied the applicable

voting standard.  "Any amendment to a condominium's declaration and/or bylaws,

which is duly passed in accordance with the provisions of those documents, are deemed

valid and enforceable under Hawaii law."  *Ass'n of Apartment Owners of Keauhou Kona*

*Surf & Racquet Club, Inc. v. Bowers*, No. 29218, 2011 WL 1421147, *17 (Haw. App. Apr. 13,

2011) (citing *D'Elia v. Ass'n of Apartment Owners of Fairway Manor*, 2 Haw. App. 347, 632

P.2d 296 (App. 1981)).  While this Court has held that the unanimity clause does not

22

apply, that still leaves the question of what voting standard *does* apply.  And two

possible provisions remain:  (1) Section 10's first paragraph, which requires the consent

of "owners owning apartments to which are appurtenant not less than 67% of the

common interest," ECF No. 60-3, at PageID.268; and (2) Section 21.C's separate

requirement of "approval of 67% of the owners," *id.* at PageID.274.

Section 21.C of the Declaration states, "*Notwithstanding anything to the contrary* in

the Project governing documents, including but not limited to the

Declaration . . . Amendments to the Declaration . . . shall require approval of 67% of the

*owners*."  *Id.* (emphases added).  Ordinarily, a "notwithstanding" clause "signals the

drafter's intention that the provisions of the 'notwithstanding' section override

conflicting provisions of any other section."  *State v. Casugay-Badiang*, 130 Hawaiʻi 21,

28, 305 P.3d 437, 444 (2013) (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1995)).

In other words, Section 21.C's "notwithstanding" clause, which provides for a 67-

percent-of-owners vote requirement, could potentially be understood to override

Section 10's standard based on approval of the owners of 67 percent of the *common*

*interest* (and its unanimity clause).

The Hawaiʻi Supreme Court, however, has adopted a narrower view of

"notwithstanding" clauses.  In the criminal context, for example, the Hawaiʻi Supreme

Court rejected an argument that a "notwithstanding any other law to the contrary"

clause in a methamphetamine sentencing statute prevented the trial court from

sentencing a defendant as a young adult under a separate sentencing statute, in part

because the young adult defendant sentencing statute was more specific and therefore

controlled over the more general sentencing statute.  *Id.* at 32, 305 P.3d at 448.

Perhaps in light of Hawaiʻi law on this point, the parties do not take a sweeping

view of the "notwithstanding" clause here.  Plaintiffs take the position that the more

specific Section 10—at least with respect to the unanimity clause—should govern over

Section 21.C.  And the Association does not seek a declaratory judgment that the

Amendment required the approval of 67 percent of the *owners*—as would be required

under Section 21.C of the Declaration, *see* ECF No. 60-3, at PageID.274—but rather the

approval of owners of 67 percent of the *common interest*—as is required under the first

part of Section 10 of the Declaration, *see id.* at PageID.268.[5]

---

[5]    The Association's position on Section 21.C is more nuanced:  It contends that
Section 21.C provides the baseline 67 percent owner threshold for approval of an
amendment.  And it suggests that Section 10's unanimity clause implicates only
whether an amendment can be contractually applied to an owner who did not consent
to it or vote in its favor.  Under this construction of the voting provisions, even where
the unanimity clause applies, an Amendment might be validly recorded with less than
unanimous approval, but nonetheless not hold force with the individual owners who
voted against it.

This argument was raised for the first time at oral argument.  And at oral
argument, Plaintiffs countered that the practical effect of such a construction would be
chaos—the owners would have to individually assess which provisions of a validly
recorded Declaration they are bound to.  The Association's position also does not
appear to be readily supported by the text of the Declaration.  The Declaration says
nothing of this distinction, and—at least absent ambiguity—contracts must be
"interpreted according to their plain meaning."  *Wong*, 130 Hawaiʻi at 49, 305 P.3d at
465.  For the purposes of the parties' cross-motions, however, the Court need not decide

But even applying Section 10's first paragraph here, it is not clear on the current

record whether the Association is entitled to a declaratory judgment that the

Amendment was validly recorded.  That is because after laying out the 67 percent of the

common interest approval standard, Section 10's first paragraph goes on to state that an

amendment to the Declaration "shall be effective only upon the filing in the Office of

the Assistant Registrar of the Land Court of the State of Hawaiʻi of an instrument

setting forth such amendment *and vote duly executed by such owners*."  ECF No. 60-3, at

PageID.268 (emphasis added).  The Association has produced evidence here that the

Amendment was recorded in that office.  *See* ECF No. 60-2, at PageID.250 (Hunter Decl.

¶ 9); ECF No. 60-9.  But as Plaintiffs point out, the Amendment itself gives rise to

another problem:  it certifies that it was "approved by the written consent of more than

sixty-seven percent (67%) *of all unit owners*," ECF No. 60-9, at PageID.363—that is, it sets

forth that consent was given in a manner that would satisfy Section 21.C, rather than

Section 10, of the Declaration.  *See also id.* at PageID.362 ("WHEREAS, pursuant to

Section 21.C of the Restatement of the Declaration, the Restatement of the Declaration

may be amended with the approval of sixty-seven percent (67%) of the owners . . . .");

*id.* ("WHEREAS, pursuant to Section 21.C of the Restatement of the Declaration, more

than sixty-seven percent (67%) of all unit owners of the Project gave their approval by

---

whether the Association is correct on this point.  At this stage, the Court's role is a
narrow one:  it has already decided that the unanimity clause does not apply to the
Amendment, and so it need not decide the consequences of that clause.

written consent to amend the Restatement of the Declaration . . . .").  Nor would the

problem be solved by the Court accepting Section 21.C's standard instead of Section

10's (a position that neither party meaningfully advances).  While the Association has

produced evidence that at least the owners of 67 percent of the *common interest*

consented to the Amendment, they have not produced evidence that at least 67 percent

of the *owners* consented to it.  *See* ECF No. 60-2, at PageID.250 (Hunter Decl. ¶ 10)

(stating that "[b]y October 18, 2022, written consent forms marked 'approved' had been

received by more than 70% of all ownership interest in the AOAO").  As the briefing

currently stands, therefore, it is unclear whether the Amendment was recorded (and

supported) in a manner that met the applicable voting standard.

    2.    Moreover, to show an entitlement to summary judgment on the remainder of

the counterclaim, the Association must take the further step of explaining why it is

appropriate for the Court to order specific performance.  It must, in other words, meet

its burden to show that "there is no genuine dispute as to any material fact *and* the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis

added).  The Association has advanced no argument on that point.  *See* ECF No. 59.

That may well be because the parties' primary focus at this stage was obtaining a

declaratory judgment interpreting the Declaration; the parties understandably treated

that as the necessary first step to potential discussions concerning the resolution of all of

their claims.  But for the Association to be entitled to summary judgment on the further

26

question of specific performance here, it must, at minimum, lay out the applicable

standard and advance an argument based on it.

Because, on the current record, it is unclear whether the Association is entitled to

an order declaring the Amendment valid and requiring specific performance, the Court

directs supplemental briefing on why summary judgment is warranted on the

remaining parts of the Association's counterclaim.  The brief should specifically address

whether the Amendment's text, which states that it was "approved by the written

consent of more than sixty-seven percent (67%) of all unit owners," ECF No. 60-9, at

PageID.362-63, affects its validity.  It should also include a summary of the applicable

standard for specific performance, argument on why that standard has been met, and

proposed language for an order directing specific performance.  A briefing schedule is

laid out at the end of this Order.

3.   Granted, the current record is sufficient to resolve a few further disputes.  As

noted, the Association produced a Declaration of its Board President Valerie Hunter, in

which she attests that "[b]y October 18, 2022, written consent forms marked 'approved'

had been received by more than 70% of all ownership interest in the AOAO."  ECF No.

60-2, at PageID.250 (Hunter Decl. ¶ 10).  Plaintiffs have offered no evidence to the

contrary; indeed, they do not suggest that, on the current record, there is a genuine

issue of material fact as to whether the 67 percent of the *common interest* approval

standard was met.  Instead, in opposing the Association's summary judgment motion,

Plaintiffs argue only that they need additional discovery on the propriety of the vote.

Plaintiffs rely on Federal Rule of Civil Procedure 56(d), which provides that "[i]f

a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

present facts essential to justify its opposition, the court may:  (1) defer considering the

motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery;

or (3) issue any other appropriate order."  A party requesting a continuance of

summary judgment for further discovery "must identify by affidavit the specific facts

that further discovery would reveal, and explain why those facts would preclude

summary judgment."  *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th

Cir. 2006) (discussing prior Rule 56(f)); *see also* Charles Alan Wright, Arthur R. Miller,

Mary Kay Kane, & Adam N. Steinman, 10B Federal Practice and Procedure § 2740 (4th

ed. 2025 update) ("When Rule 56 was rewritten in 2010, those provisions were moved to

a new subdivision (d), without any substantial change.  Thus, precedent prior to 2010

citing Rule 56(f) is fully applicable to current Rule 56(d).").  Moreover, a "court does not

abuse its discretion by denying further discovery if the movant has failed diligently to

pursue discovery in the past."  *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th

Cir. 2001).

Here, counsel for Plaintiffs offered a Declaration stating that "Plaintiffs have

been unable to obtain the evidence they need thus far to oppose" the Association's

summary judgment motion, and specifically the motion's assertion that "sufficient consent forms have been received to constitute 70% approval of the AOAO's total common interest."  ECF No. 64-1, at PageID.423 (Anthony F.T. Suetsugu Decl. ¶ 6). According to Plaintiffs, that is because the parties "have discussed holding off on discovery to give the parties an opportunity to settle" and to limit "attorneys' fees and costs related to discovery."  *Id.* (¶ 8).  Plaintiffs further explain that the evidence they would need to dispute the Amendment's validity, "including all records relating to how the consents were sent to the owners and collected, and how the vote percentages were calculated, is in control" of the Association."  *Id.* (¶ 9).  Such evidence includes (1) depositions of the persons who drafted, sent out, and counted the consent forms, and who calculated the percentage of approval; (2) requests for production of documents related to the consent forms; (3) depositions of the board members "regarding information provided to the board related to the vote"; and (4) requests for production of documents regarding the "minutes of board meetings related to the vote."  *Id.* (¶ 10).

The discovery deadline was March 14, 2025, the day after the Court's hearing on the parties' summary judgment motions.  On that date, the parties stipulated to extend the discovery deadline until "two (2) weeks after the Court issues its decision" on the parties' motions.  ECF No. 82, at PageID.590 (bold omitted).  The stipulation provided, however, that the extension was "for the sole purpose of Plaintiffs responding to

Defendants' outstanding requests, and no other purpose." *Id.* It was not, therefore, extended to allow Plaintiffs to serve new requests. This stipulation at least suggests that the Association served discovery requests before the deadline, and that the parties are not in agreement that Plaintiffs should be permitted further discovery on this issue. In any event, Plaintiffs cannot rely on an out-of-court understanding between the parties about the timing of discovery without seeking Court approval for an extension of the discovery deadline. And as noted, the only stipulation in the record does not permit Plaintiffs to serve new discovery requests.

Furthermore, although Plaintiffs have broadly identified the discovery they would pursue if permitted to do so, Plaintiffs do not take the further step of identifying by affidavit what specific facts that additional discovery would reveal, nor do they explain why such facts would prevent summary judgment. Plaintiffs instead broadly assert that "[w]ithout this information, Plaintiffs cannot prove that the AOAO failed to meet even the lower requirement of 67%." ECF No. 63, at PageID.411. But they do not take the further step of representing that any specific facts they hope to discover would indeed prove as much. *See Tatum*, 441 F.3d at 1100-01 (holding denial of Rule 56(f) motion was not abuse of discretion because movant did not identify specific facts anticipated from further discovery). And in the over one-year since initiating this case, Plaintiffs have apparently served no discovery requests related to the propriety of the vote. *See* ECF No. 64-1, at PageID.423 (¶ 7) (stating that no discovery was served).

Thus, although the information regarding the propriety of the vote is in the

Association's control—and given that the parties did not present to the Court any

timely stipulation reflecting Plaintiffs' asserted out-of-court agreement—the record

compels a finding that Plaintiffs' efforts to obtain it have been dilatory.  *See Greer v.*

*Lockheed Martin Corp.*, 855 F. Supp. 2d 979, 985-86 (N.D. Cal. 2012) (denying Rule 56(d)

continuance because plaintiff's discovery efforts were dilatory and because the

declaration failed to state the specific facts that further discovery would reveal and how

those facts would preclude summary judgment).  Plaintiffs cannot sit on their hands

while time passes and then claim that summary judgment is premature based on

evidence that they have not requested, particularly when they have no explanation for

how it would undermine the validity of the vote or otherwise prevent summary

judgment.  Mere speculation that it would do so is insufficient to warrant a continuance.

*Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (2018).

    For these reasons, Plaintiffs' Rule 56(d) request is DENIED.

    4.   Plaintiffs advance one other argument that the Court can resolve today:  they

contend that the Amendment cannot be enforced because its terms are self-

contradictory.  Plaintiffs point to the Amendment's provisions on transient rentals.  The

Amendment states that "no apartment shall be leased or rented by any apartment

owner for transient purposes."  ECF No. 60-9, at PageID.362-63 (Amend.).  The next

paragraph defines "transient purposes," as discussed above.  *Id.* at PageID.363.  It then

31

states that "[t]he following restrictions apply to transient rentals," and lays out a list to that effect.  *Id.*  Plaintiffs contend that the latter paragraph contradicts the first because it "seemingly allows 'transient rentals' under certain conditions or 'restrictions.'"  ECF No. 63, at PageID.412.

As with the Declaration, the Court applies Hawaiʻi contract law to interpret the Amendment.  "To be enforceable, a contract must be certain and definite as to its essential terms."  *Provident Funding Assocs., L.P. v. Gardner*, 149 Hawaiʻi 288, 297, 488 P.3d 1267, 1276 (2021) (cleaned up).  "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Id.* (cleaned up).  The destruction of a contract for lack of definiteness is disfavored; courts will, if possible, construe a contract as sufficiently definite so as to effectuate the intent of the parties.  *Id.*

Plaintiffs' argument that the Amendment is too ambiguous to be enforced is unpersuasive.  The list of restrictions on transient rentals can be reconciled with the Amendment's prohibition of transient rentals because, consistent with the Amendment's definition of prohibited transient purposes, the list states that "[a]ll rental agreements must . . . be for a minimum of three hundred and sixty-five (365) consecutive days."  ECF No. 60-9, at PageID.363.  That paragraph is therefore best read as outlining the specific boundaries of rentals; it does not provide a basis for invalidating the Amendment.  Plaintiffs' arguments on these points fall short.

32

\*     \*     \*

Because it is not clear on the current record, however, whether the Association is entitled to judgment as a matter of law on the rest of its counterclaim, the Court ORDERS supplemental briefing as follows:  By May 6, 2025, the Association shall file a supplemental brief of no more than fifteen pages, addressing why it is entitled to summary judgment on the remaining parts of its counterclaim.  The brief should specifically address whether the Amendment's statement that it was "approved by the written consent of more than sixty-seven percent (67%) of all unit owners," *id.* at PageID.362-63, affects its validity.  It should also include a summary of the applicable standard for specific performance, legal argument on why that standard has been met, and proposed language for an order directing specific performance.  By May 20, 2025, Plaintiffs shall file a supplemental brief of no more than fifteen pages, responding to the same.  The parties' briefs may rely only on evidence that has already been submitted in the parties' respective concise statements of fact, and may not include new evidence or argument outside of this scope.  After receipt of the parties' briefs, the Court will notify the parties if it decides to set a further hearing.

Should the parties come to a resolution regarding the remaining claims in light of the Court's declaratory judgment interpreting Section 10 of the Declaration, they may request that the Court vacate or continue these deadlines.  In the meantime, the Court

RESERVES RULING IN PART on the parties' cross-motions for summary judgment as to the rest of the Association's counterclaim.

## CONCLUSION

For these reasons:

(1)     The Association's Motion for Summary Judgment on its Counterclaim, ECF No. 59, is GRANTED IN PART and ruling is RESERVED IN PART; namely, summary judgment is granted in the Association's favor as to its request for a declaratory judgment interpreting Section 10 of the Declaration, and ruling is reserved as to the validity of the Amendment and specific performance;

(2)     To the same extent, Plaintiffs' Motion for Summary Judgment on the Association's Counterclaim, ECF No. 73, is DENIED IN PART and ruling is RESERVED IN PART;

(3)     Plaintiffs' request for a Rule 56(d) continuance is DENIED; and

(4)     Supplemental briefing is DIRECTED as follows:  By May 6, 2025, the Association shall file a supplemental brief of no more than fifteen pages that (a) addresses why summary judgment is warranted on the rest of its counterclaim, and (b) sets forth proposed language for an order directing specific performance.  By May 20, 2025, Plaintiffs shall file a responsive supplemental brief of no more than fifteen pages.

IT IS SO ORDERED.

DATED:  April 22, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

---

Civil No. 23-00582 MWJS-RT; *Bowa Estates Limited*, et al. *v. Association of Apartment Owners of Wailea Point Village*, et al.; ORDER GRANTING IN PART AND RESERVING RULING IN PART ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, DENYING IN PART AND RESERVING RULING IN PART ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, DENYING PLAINTIFFS' REQUEST FOR A RULE 56(D) CONTINUANCE, AND DIRECTING SUPPLEMENTAL BRIEFING