IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BOWA ESTATES LIMITED, *et al.*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF WAILEA POINT VILLAGE, *et al.*,<br><br>        Defendants. | Civil No. 23-00582 MWJS-RT<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, AND DENYING PLAINTIFFS' RULE 54(B) MOTION WITHOUT PREJUDICE |

**INTRODUCTION**

Central to this case is a dispute about the validity of an Amendment made to the

governing rules, or Declaration, of the Association of Apartment Owners of Wailea

Point Village in Maui.  The Amendment changed the minimum period for which

owners could lease their units from 30 to 365 days.  The owners who voted against the

Amendment sued, asserting it was not approved by the requisite standard, and the

Association countersued, seeking a declaratory judgment that the Amendment is valid

and specific performance of its terms.

The court has already disposed of part of the parties' dispute.  In an earlier order,

the court rejected Plaintiffs' argument that unanimous consent of the owners was

required to pass the Amendment.  But the court reserved ruling on whether the

Amendment was in fact valid and whether specific performance was the appropriate

relief, and it ordered supplemental briefing on those questions.

The parties have now submitted supplemental briefing on the first of these

issues—the validity of the Amendment.  Based on these submissions, the court

GRANTS in further part summary judgment in favor of the Association; that is, it

GRANTS in part the Association's motion and DENIES Plaintiffs' motion to the same

extent.  The parties, however, had obtained a stay of supplemental briefing on the

second issue, the specific performance count.  That is because Plaintiffs filed a Rule

54(b) motion for entry of final judgment, in which they seek to appeal this court's ruling

on the underlying approval standard before reaching the remaining questions in this

suit.  For the reasons explained below, Plaintiffs' Rule 54(b) motion is DENIED without

prejudice to renewal after the court has ruled on the entirety of the Association's

counterclaim.  Accordingly, the court SETS new deadlines for the rest of briefing below.

## BACKGROUND

The background of this case is summarized in the court's first partial summary

judgment order.  ECF No. 85.  The court assumes the reader's familiarity with that order

and repeats the background only as necessary to dispose of the issues at this stage.

### A.    Factual Background

The disputed Amendment is to Wailea Point Village's Declaration, which

governs the Association.  *See* ECF No. 60-3.  The Amendment changed a provision in

the Declaration that governed the minimum duration for which owners could lease

their units.  The original Declaration prohibited any owner from renting their apartment

"for transient purposes, which is defined as a lease or rental for a period less than thirty

(30) consecutive days."  *Id.* at PageID.263 (footnote omitted).

In July 2022, the Association's Board sent out consent forms to owners regarding

a possible change in the terms.  ECF No. 60-6 (Consent Form); ECF No. 60-2, at

PageID.250 (Valerie Hunter Decl. ¶ 6).  If approved, the Amendment would change the

definition of "transient purposes" to prohibit owners from leasing out their apartments

for periods of less than 365 days rather than the existing 30-day minimum rental period.

*See* ECF No. 60-7, at PageID.356.  The Board took the position that this change could be

approved with the consent of the owners of 67 percent of the common interest under a

voting standard set forth in Section 10 of the Declaration.  *See* ECF No. 60-6, at

PageID.355.  According to the Association, when it received the consent forms back

from the owners, that threshold was met.  ECF No. 60-2, at PageID.250 (Hunter Decl.

¶ 10) (stating that by "October 18, 2022, written consent forms marked 'approved' had

been received by more than 70% of all ownership interest in the AOAO").

Accordingly, on October 18, 2022, the Amendment was recorded with the State

of Hawaiʻi Office of the Assistant Registrar Land Court System.  *Id.* (¶ 9); ECF No. 60-9.

The Amendment itself, however, stated that it had been approved by 67 percent of the

*owners*, rather than owners of 67 percent of the *common interest*, pursuant to a separate

3

consent standard contained in Section 21.C of the Declaration.  ECF No. 60-9, at

PageID.362-63.

The validity of the Amendment rests on two sections of the Declaration that

govern the process by which owners can amend it.  The first of these, Section 10 of the

Declaration, broadly states in its first paragraph that "[e]xcept as otherwise provided

herein . . . this Declaration . . . may be amended by either the affirmative vote or written

consent of apartment owners owning apartments to which are appurtenant not less

than sixty-seven percent (67%) of the common interest."  ECF No. 60-3, at PageID.268.

It says that such an amendment "shall be effective only upon the filing in the Office of

the Assistant Registrar of the Land Court of the State of Hawai'i of an instrument

setting forth such amendment and vote duly executed by such owners."  *Id.*  In a

separate sentence that Plaintiffs relied on at earlier stages of this suit, Section 10 also

requires the unanimous consent of the owners for certain changes.  *Id.* at PageID.269.

A separate section of the Declaration lays out an approval threshold based on 67

percent of the owners:  Section 21.C of the Declaration provides, "Notwithstanding

anything to the contrary in the Project governing documents, including but not limited

to the Declaration, . . . Amendments to the Declaration . . . shall require approval of 67%

of the owners."  *Id.* at PageID.274.

//

//

4

### B.    Procedural Background

The owner Plaintiffs, who voted against the Amendment, dispute its validity.

They filed suit in December 2023, asserting claims for breach of contract, breach of

fiduciary duties, and retaliation, arising from an underlying theory that the

Amendment was improperly recorded because unanimous approval was required.

ECF Nos. 1, 54.  The Association countersued, seeking a declaratory judgment

interpreting Section 10 of the Declaration (count one) and ordering that Plaintiffs abide

by the terms of the Amendment (count two).  ECF No. 55-1.

The parties filed cross-motions for summary judgment on the Association's

counterclaim.  ECF Nos. 59, 73.  The court held a hearing on the motions on March 13,

2025.  ECF No. 81.  And on April 22, 2025, the court issued an order ruling in the

Association's favor in part and reserving ruling in part.  ECF No. 85.  Namely, the court

rejected Plaintiffs' argument that the Amendment could only be passed with

unanimous consent.  *Id.*  But given the apparently two different voting standards in

Sections 10 and 21.C—owners of units appurtenant to 67 percent of the common

interest versus 67 percent of the owners—the court reserved ruling on the validity of the

Amendment and the specific performance count, and it ordered supplemental briefing

on those issues.  *Id.*

Following the court's partial ruling in the Association's favor, Plaintiffs filed a

motion for entry of final judgment under Federal Rule of Civil Procedure 54(b).  ECF

No. 88.  The Association does not oppose entry of final judgment in its favor, though it

questions whether review at this stage would promote efficiency.  *See* ECF No. 94.  The

parties agreed to stay supplemental briefing on the specific performance issue pending

the court's ruling on the Rule 54(b) motion.  *See* ECF Nos. 93, 95.  They filed

supplemental briefs addressing the validity of the Amendment, however, *see* ECF Nos.

91, 97, and that issue is now before the court together with the Rule 54(b) motion.

## DISCUSSION

### A.      Validity of the Amendment

Before turning to the Rule 54(b) motion, the court must dispose of all the issues

that are already teed up for ruling.  And although the court has previously ruled on the

applicable consent standard, it has not yet decided whether the Amendment was in fact

valid.

As a general rule, "[a]ny amendment to a condominium's declaration and/or

bylaws, which is duly passed in accordance with the provisions of those documents, are

deemed valid and enforceable under Hawaii law."  *Ass'n of Apartment Owners of*

*Keauhou Kona Surf & Racquet Club, Inc. v. Bowers*, No. 29218, 2011 WL 1421147, *17 (Haw.

App. Apr. 13, 2011).  Section 10 of the Declaration at issue in this case, which lays out

the 67 percent of the common interest approval standard, also states that an amendment

to the Declaration "shall be effective only upon filing in the Office of the Assistant

Registrar of the Land Court of the State of Hawai'i of an instrument setting forth such

amendment and vote duly executed by such owners."  ECF No. 60-3, at PageID.268.

That is, an instrument must (1) be filed in the appropriate office, (2) set forth the

amendment, and (3) set forth the vote duly executed by the owners.

The Association has produced evidence that the Amendment was duly recorded

in the land court office.  *See* No. 60-2, at PageID.250 (Hunter Decl. ¶ 9); ECF No. 60-9.

But at first pass, the Amendment itself appears to contain a discrepancy regarding the

vote:  it certifies that it was "approved by the written consent of more than sixty-seven

percent (67%) *of all unit owners*," ECF No. 60-9, at PageID.363—that is to say, it indicates

that consent was given pursuant to Section 21.C, not Section 10, of the Declaration, *see*

*also id.* at PageID.362 ("WHEREAS, pursuant to Section 21.C of the Restatement of the

Declaration, more than sixty-seven percent (67%) of all unit owners of the Project gave

their approval by written consent to amend the Restatement of the Declaration as

hereinafter set forth.").  And although on summary judgment, the Association

produced evidence that at least the owners of 67 percent of the *common interest*

consented to the Amendment pursuant to Section 10, the Association did not directly

represent that at least 67 percent of the *owners* consented to it pursuant to Section 21.C.

*See* ECF No. 60, at PageID.243 (Def.'s Concise Statement of Fact ¶ 11); ECF No. 60-2, at

PageID.250 (Hunter Decl. ¶ 10) (stating that by "October 18, 2022, written consent forms

marked 'approved' had been received by more than 70% of all ownership interest in the

AOAO").  The Association did not explain this discrepancy in its initial briefs.

In its supplemental brief, however, the Association persuasively explains why this apparent discrepancy does not undermine the validity of the Amendment. Hawai'i Revised Statutes (HRS) § 514B-3 (2018) defines the key terms: Under Hawai'i condominium law, the "common interest" means "the percentage of undivided interest in the common elements appurtenant to each unit, as expressed in the declaration, and any specified percentage of the common interest means such percentage of the undivided interests in the aggregate." *Id.* A "unit owner" means the "person owning, or the persons owning jointly or in common, a unit *and its appurtenant common interest*." *Id.* (emphasis added). And "[a]ny specified percentage of the unit owners means the owners of units to which are *appurtenant such percentage of the common interest*." *Id.* (emphasis added). Put simply, under these definitions, the owners of a specified percentage of the common interest means the same thing as a specified percentage of the unit owners: both refer to the owners who are appurtenant to that percentage of the common interest. These statutory definitions apply to the terms of a declaration "unless specifically provided otherwise or required by the context." *Id.* And so, the Association explains, the phrases 67 percent of the "common interest" and 67 percent of the "owners" in the Declaration refer to the same thing. ECF No. 91.

Plaintiffs attempt to distance the Declaration's terms from these definitions, emphasizing that Section 21.C does not use the words "unit owners," but rather merely "owners." ECF No. 97, at PageID.761, 764. But Plaintiffs offer no reason why the

8

shorthand "owners" should be defined any differently.  The Declaration does not state

that its terms should be defined apart from HRS § 514B-3's presumptive definitions, nor

does the Declaration's context require them to be.  The Declaration plainly refers to the

owners of the Association's apartment *units* and the common interest.  This is

highlighted by the Amendment's language, which uses "owners" and the more precise

phrase of "unit owners" interchangeably.  ECF No. 60-9, at PageID.362-63 (stating that

the Declaration could be amended "with the approval of sixty-seven percent (67%) of

the *owners*" and that it was "approved by the written consent of more than sixty-seven

percent (67%) of all *unit owners*." (emphases added)).  Moreover, the court looks to

industry norms to understand the Declaration drafters' intended meaning when it

referred to 67 percent of the "owners."  *See Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins.*

*Co.*, 155 Hawai'i 108, 126, 557 P.3d 837, 855 (2024) (discussing insurance industry

drafters' intentions).  And HRS § 514B-3 offers keen insight into what industry players

typically mean when they refer to a specified percentage of "owners" in this context—

insight that applies with or without the word "unit" before "owners."

In seeking to distinguish Section 10 and Section 21.C's 67 percent standards,

Plaintiffs separately press the principle of contract interpretation that the "use of

different language" in a contract to refer to parallel issues "strongly implies that a

different meaning was intended."  ECF No. 97, at PageID.758 (quoting *Mendy v. Larson*,

No. 22-cv-01426, 2024 WL 2922933, at *15 (W.D. Wash. June 10, 2024)).  That is true as a

9

general matter.  But principles of contract interpretation are merely presumptions that

apply in the absence of evidence to the contrary.  And that presumption is overcome

here because HRS § 514B-3 explains why it is reasonable to define 67 percent of the

"common interest" and 67 percent of the "owners" as meaning the same thing in this

context.  Indeed, Plaintiffs offer no reasonable alternative.

As a final salvo, Plaintiffs point out that the Association took a different position

on the relationship between Section 10's 67 percent of the "common interest" standard

and Section 21.C's 67 percent of the "owners" standard earlier in the summary

judgment proceedings.  During the March 13, 2025, hearing on the summary judgment

motion, the Association suggested that Section 10 and Section 21.C's voting standards

were distinct, and took the position that Section 21.C provides the baseline 67 percent

owner threshold for approval of an amendment.  *See* ECF No. 85, at PageID.616 n.5.  To

be sure, it is inadvisable to take inconsistent positions; a party risks waiver or worse.

But here, the court declines to reject the clear answer supplied by HRS § 514B-3 merely

because the court was not persuaded by the Association's earlier argument.

That takes us back to the Amendment itself, which states that it was "approved

by the written consent of more than sixty-seven percent (67%) of all unit owners."  ECF

No. 60-9, at PageID.362-63.  And on summary judgment, the Association has produced

evidence in the form of a Declaration that the Amendment was indeed approved by the

owners of at least 67 percent of the common interest.  *See* ECF No. 60-2, at PageID.250

10

(Hunter Decl. ¶ 10). Because the court has concluded that these phrases refer to the same standard—and because Plaintiffs have offered no other evidence to otherwise undercut the Amendment's validity—the court finds that the Amendment was duly passed in accordance with the Declaration's requirements and that it is therefore valid. *See* Fed. R. Civ. P. 56(a). The Association's motion for summary judgment is GRANTED IN PART to that extent, and Plaintiffs' motion is DENIED to the same extent.

**B.    Rule 54(b) Certification**

Before reaching the remaining pieces of their case, Plaintiffs request that the court enter final judgment as to count one of the Association's counterclaim regarding the applicable consent standard and corresponding validity of the Amendment, which they say is the "linchpin" of this case. ECF No. 88. Plaintiffs seek to appeal that initial ruling through the mechanism of Federal Rule of Civil Procedure 54(b).

As a general rule, orders granting partial summary judgment are not appealable final orders under 28 U.S.C. § 1291. *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 627 (9th Cir. 2015). Rule 54(b), however, provides a mechanism by which an otherwise unappealable partial summary judgment order might be reviewed on appeal. *Id.* "When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim— . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). When a party seeks entry of

final judgment, Rule 54(b) directs the district court to engage in a two-step assessment.

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980).  First, the court must

determine whether it is "dealing with a 'final judgment.'"  *Id.* at 7.  That is, the ruling

must be a "decision upon a cognizable claim for relief," and it must be "an ultimate

disposition of an individual claim entered in the course of a multiple claims action."  *Id.*

(cleaned up).  Second, the court must determine "whether there is any just reason for

delay."  *Id.* at 8.

Plaintiffs' motion stumbles first on the final judgment prong.  Plaintiffs correctly

argue that the court has now fully disposed of count one of the Association's

counterclaim—the court has decided the proper consent standard and granted

declaratory relief on the validity of the Amendment.  Plaintiffs would have the court

hold off on deciding count two, which is for specific performance of the Amendment's

terms.  But the Ninth Circuit has cautioned that even where there are separate counts in

a complaint, "only one *claim* is presented when a single set of facts gives rise to a legal

right of recovery under several different *remedies*."  *Pakootas v. Teck Cominco Metals, Ltd.*,

905 F.3d 565, 575 (9th Cir. 2018) (cleaned up) (emphases added).  A count for punitive

damages and a count for compensatory damages that arise from the same set of facts,

for example, is a single claim for the purposes of Rule 54(b).  *Ariz. State Carpenters

Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991).  So, too, is a count for a

declaratory judgment and one for specific performance, where both arise out of the

same set of facts.  That is exactly the situation presented here.

Simply put, Rule 54(b) "does not relax the finality required of each decision, as

an individual claim, to render it appealable," *id.* at 1039 (quoting *Sears, Roebuck & Co. v.*

*Mackey*, 351 U.S. 427, 435 (1956)); it merely "allows a judgment to be entered if it has the

requisite degree of finality as to an individual claim in a multiclaim action," *id.* at 1040

(cleaned up).  Because the specific performance remedy makes up part of the same

single claim as the declaratory judgment on the Amendment's validity, the requisite

finality is not present here, and the court cannot enter final judgment on count one of

the Association's counterclaim while count two is still outstanding.

Plaintiffs' motion faces similar shortcomings on the second step of Rule 54(b).

This latter step encompasses an assessment of the equities and judicial administrative

interests.  *See Jewel*, 810 F.3d at 628.  Considerations include whether the adjudicated

and remaining claims are separable, whether an appellate resolution of the adjudicated

claim would be mooted by further proceedings, and the potential for subsequent

duplicative proceedings before the appellate court.  *See Curtiss-Wright Corp.*, 446 U.S. at

6-8; *see also* Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, 15A *Federal*

*Practice and Procedure* § 3914.7.3 (3rd ed. May 2025 Update).  Even an individual claim

that is "in some sense separable from the remaining unresolved claims" might be more

appropriately reviewed at a later time.  *See Curtiss-Wright Corp.*, 446 U.S. at 8.  A district

court should avoid "piecemeal appeals in cases which should be reviewed only as single units."  *Id.* at 10.

Here, Plaintiffs press that the applicable consent standard is the "linchpin" of the parties' claims.  ECF No. 88, at PageID.647 (citing *Jewel*, 810 F.3d at 630-31, for the proposition that Rule 54(b) certification on a "linchpin" claim is likely to aid "expeditious decision" of a case).  And to be sure, the parties agree that appellate review of the court's decision on that issue might "hasten a settlement" between them on all remaining issues in this case.  *Id.* at PageID.649-50.  It also appears to be unlikely that further proceedings would moot the need for appellate review, at least absent settlement.

Yet appellate review of the case at this early stage—where there is not even so much as a final judgment on a single claim—would produce the significant possibility of successive appeals to the Ninth Circuit on the same set of issues.  While Plaintiffs suggest that certification might "eliminate the need for any further appellate review," *id.* at PageID.647 (cleaned up), the opposite is also true—it would risk the same claim being appealed to the Ninth Circuit on the issue of merely a distinct remedy.  That is, if the Ninth Circuit affirmed this court's initial declaratory judgment ruling and this court subsequently ruled on specific performance, the Ninth Circuit may well end up with the case right back before it on count two.

Finally, the court is not convinced that the minimal further supplemental briefing

it has ordered will be "unnecessarily strenuous" on the parties. *Id.* at PageID.648.  The

remaining briefing is limited to the question of a single remedy requested in the

Association's counterclaim, and for the reasons explained above, is appropriately

addressed prior to any appeal.

The court therefore DENIES Plaintiffs' Rule 54(b) motion.  That is not to say

Plaintiffs may never obtain Rule 54(b) certification in this case; Plaintiffs are welcome to

renew their request after the court has disposed of at least one claim, which will be the

case once it has resolved the Association's request for specific performance.  The court

makes no decisions on whether certification might be appropriate at that later stage.

But to enter final judgment and certify the case for an appeal now would not comply

with Rule 54(b)'s requirements, nor would it advance the judicial and equitable interests

safeguarded by the rule.[1]

*       *       *

The court SETS new deadlines for supplemental briefing on the remaining

question of specific performance as follows:  By July 28, 2025, the Association shall file a

supplemental brief of no more than ten pages, which shall include a summary of the

---

[1]     As no attorneys' fees motion is currently before the court, the court makes no
decisions on that issue.  *See* ECF No. 94 (Defs.' Response to Pls.' Rule 54(b) Motion)
(representing that Defendants will be moving for fees irrespective of any pending
appeal).

applicable standard for specific performance, legal argument on why that standard has

been met, and proposed language for an order directing specific performance.  By

August 7, 2025, Plaintiffs shall file a supplemental brief of no more than ten pages

responding to the same.  Again, the parties' briefs may rely only on evidence that has

already been submitted in the parties' respective concise statements of fact, and they

may not submit new evidence outside of that scope.

### CONCLUSION

For these reasons:

(1)     The Association's Motion for Summary Judgment on its Counterclaim,

ECF No. 59, is GRANTED in part; namely, it is granted insofar as it seeks a declaratory

judgment that the Amendment is valid;

(2)     Plaintiffs' Motion for Summary Judgment on the Association's

Counterclaim, ECF No. 73, is DENIED in part to the same extent;

(3)     Plaintiffs' Motion for Entry of Final Judgment Pursuant to Rule 54(b), ECF

No. 88, is DENIED without prejudice; and

(4)     Supplemental briefing deadlines are SET as follows:  By July 28, 2025, the

Association shall file a supplemental brief of no more than ten pages that (a) addresses

why summary judgment is warranted on count two of its counterclaim, and (b) sets

forth proposed language for an order directing specific performance.  By August 7,

2025, Plaintiffs shall file a supplemental brief of no more than ten pages responding to

the same.

IT IS SO ORDERED.

DATED:  July 18, 2025, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 23-00582 MWJS-RT; *Bowa Estates Limited*, et al. *v. Association of Apartment Owners of Wailea Point Village*, et al.; ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM, AND DENYING PLAINTIFFS' RULE 54(B) MOTION WITHOUT PREJUDICE